Slip Op. 11-39

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMANDA FOODS (VIETNAM) LTD., *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　　-v-<br><br>UNITED STATES,<br><br>　　　　　　　　Defendant,<br><br>　　　　- and -<br><br>AD HOC SHRIMP TRADE ACTION COMMITTEE,<br><br>　　　　　Defendant-Intervenor. | Before: Pogue, Chief Judge<br><br>Consol.[1] Court No. 08-00301 |

OPINION

[Affirming Department of Commerce's final results of redetermination pursuant to second court remand]

　　　　　　　　　　　　　　　　　　Dated: April 14, 2011

　　Mayer Brown LLP (Matthew J. McConkey and Jeffery C. Lowe) for Plaintiff Amanda Foods (Vietnam) Ltd.

　　Thompson Hine LLP (Matthew R. Nicely and David S. Christy) and Winston & Strawn LLP (William H. Barringer) for Consolidated Plaintiffs Ca Mau Seafood Joint Stock Company; Cadovimex Seafood Import-Export and Processing Joint-Stock Company; Cafatex Fishery Joint Stock Corporation; Can Tho Agricultural and Animal Products Import Export Company; Coastal Fisheries Development Corporation; C.P. Vietnam Livestock Co., Ltd.; Cuulong Seaproducts Company; Danang Seaproducts Import Export Corporation; Investment Commerce Fisheries Corporation; Minh Hai Export Frozen Seafood Processing Joint-Stock Company; Minh Hai Joint-Stock Seafoods Processing Company; Ngoc Sinh Private Enterprise; Nha Trang Fisheries Joint

---

　　[1] The actions consolidated herein include Court Nos. 08-00347 and 08-00325, the latter of which has been dismissed by stipulation between the parties.

Stock Company; Nha Trang Seaproduct Company; Phu Cuong Seafood Processing & Import-Export Co., Ltd.; Sao Ta Foods Joint Stock Company; Soc Trang Aquatic Products and General Import-Export Company; Thuan Phuoc Seafoods and Trading Corporation; UTXI Aquatic Products Processing Company; Viet Foods Co., Ltd.; Kim Anh Co., Ltd.; and Phuong Nam Co., Ltd.

   Tony West, Assistant Attorney General; Jeanne E. Davidson, Director; Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Stephen C. Tosini), and, of counsel, Jonathan M. Zielinski, Attorney, Office of the Chief Counsel for Import Administration, Department of Commerce, for Defendant United States.

   Picard Kentz & Rowe LLP (Andrew W. Kentz, Jordan C. Kahn, and Nathaniel M. Rickard) for Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee.

   **Pogue, Chief Judge:** This consolidated action is again before the court following a second remand of the final results of the second administrative review of the antidumping ("AD") duty order covering frozen warmwater shrimp from the Socialist Republic of Vietnam.[2]

   At issue is the Department of Commerce's assignment, to

---

   [2] See Final Results of [Second] Redetermination Pursuant to Court Remand (Dec. 2, 2010) ("Second Remand Results")(filed with the court on Dec. 9, 2010 [Dkt. No. 94]); Amanda Foods (Vietnam) Ltd. v. United States, __ CIT __, 714 F. Supp. 2d 1282, 1295-96 (2010) ("Amanda II") (remanding Final Results of Redetermination Pursuant to Court Remand (Mar. 3, 2010) ("First Remand Results")); Amanda Foods (Vietnam) Ltd. v. United States, __ CIT __, 647 F. Supp. 2d 1368, 1382 (2009) ("Amanda I") (remanding Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, 73 Fed. Reg. 52,273 (Dep't Commerce Sept. 9, 2008) (final results and final partial rescission of AD duty administrative review) ("Final Results")). The period of review ("POR") covers entries made from February 1, 2006 through January 31, 2007. Final Results, 73 Fed. Reg. at 52,273.

Consol. Court No. 08-00301                                          Page 3

Plaintiffs,[3] of a dumping rate higher than the average of the zero and *de minimis* rates assigned to the individually investigated respondents in the review.[4]

In its Second Remand Results, Commerce changed course and, after corroborating the reasonableness of doing so, assigned to the Plaintiffs the average of the zero and *de minimis* rates received by the individually investigated respondents.  This decision comports with the court's remand order in Amanda II, relies on a reasonable interpretation of the AD statute, and is supported by substantial evidence.  Therefore, as explained more fully below, the Second Remand Results are affirmed.

---

[3] Plaintiffs are cooperative, non-individually investigated respondents in the administrative review, see Section 777A(c)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677f-1(c)(2) (permitting Commerce to limit its examination to a subset of the respondents for whom review was requested, where it is not practicable to determine individual dumping margins for all respondents) (all further citation to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition). Plaintiffs have established their entitlement to a rate separate from that of the Vietnam-wide entity. See Amanda I, __ CIT at __, 647 F. Supp. 2d at 1374 & n.9 (quoting Decca Hospitality Furnishings, LLC v. United States, 29 CIT 920, 921, 391 F. Supp. 2d 1298, 1300 (2005) ("While Commerce presumes that all companies [operating in a non-market economy, such as Vietnam] are under state-control, a company may rebut this presumption, and therefore qualify for an antidumping duty rate separate from the [country]-wide rate, if it demonstrates *de jure* and *de facto* independence from government control.")).

[4] All individually-investigated respondents' margins were zero or *de minimis*. Final Results, 73 Fed. Reg. at 52,274-75.

**BACKGROUND**[5]

A.  <u>Amanda I</u>

In its original <u>Final Results</u>, rather than averaging the two mandatory respondents' zero and *de minimis* margins to calculate dumping margins for cooperative non-individually investigated respondents entitled to a separate rate ("Plaintiffs" or "the separate rate companies"), the Department of Commerce ("Commerce" or the "Department") assigned to Plaintiffs the same rates assigned to them previously in the original investigation leading to the AD order. <u>Final Results</u>, 73 Fed. Reg. at 52,275. Those rates, of course, were based on sales made prior to the AD order.[6] To Commerce, these rates were appropriate, as the most recent rate that Plaintiffs had received in a prior proceeding, because they were "reflective of the range of commercial behavior demonstrated by exporters of subject merchandise during a very recent period in time." <u>Id.</u>

In <u>Amanda I</u>, the court found Commerce's decision unsupported by the record, as the factors cited – that thirty-five uncooperative companies received margins based on adverse facts

---

[5] While some of the court's conclusions are summarized in the Background section of this opinion, familiarity with the court's decisions in <u>Amanda I</u> and <u>Amanda II</u> is presumed.

[6] Separate rate companies that were individually examined in the first administrative review of this antidumping duty order were assigned the rate they received in the first review. <u>Id.</u> However, none of the rates assigned based on rates from the first review are at issue in this case.

available in the second review, and that Commerce found the circumstances of the second review to be similar to those of the preceding review[7] – are unrelated to the pricing behavior of cooperative separate rate companies during the second POR. Amanda I, __ CIT at __, 647 F. Supp. 2d at 1381. The court therefore remanded Commerce's decision, directing the Department to assign to Plaintiffs the weighted average of the mandatory respondents' rates, or to provide justification, based on substantial evidence on the record, for using another rate. Id. at 1382.

B.   Amanda II

In its first remand redetermination, the Department continued to defend the rates assigned to Plaintiffs in the Final Results of the second review. First Remand Results 13. Specifically, the Department argued that the AD statute articulates a preference against the use of zero or *de minimis* margins when calculating rates for non-individually investigated respondents. Id. at 14. In addition to this statutory interpretation, the Department pointed to the presence of non-cooperative respondents in the first and second reviews, as well as the calculation of transaction-specific above-*de minimis* dumping margins for at least one mandatory respondent in the

---

[7] See Final Results, 73 Fed. Reg. at 52,275; Issues & Decision Mem., A-552-802, APR 06-07 (Sept. 2, 2008), Admin. R. Pub. Doc. 231 (adopted in Final Results, 73 Fed. Reg. at 52,273), Cmt. 6 at 19.

second review. To Commerce, these factors constituted evidence that continued dumping under the AD duty order made assigning to Plaintiffs the average of the mandatory respondents' zero and *de minimis* rates inappropriate in this case. Id. at 14-18.

In Amanda II, the court concluded that the Department's statutory interpretation was unreasonable and therefore not entitled to deference. As the court explained, the statute specifically contemplates, as potentially reasonable, the assignment to non-individually investigated companies of the average of the zero and *de minimis* rates received by individually investigated companies. Amanda II, __ CIT at __, 714 F. Supp. 2d at 1291-92. Consequently, Commerce's contrary prohibition on the use of these rates could not be reasonable. Furthermore, as a factual matter, the court concluded that neither the minimal transaction-specific positive dumping margins of one mandatory respondent nor the presumption of dumping imputed to non-cooperating respondents constituted substantial evidence in support of the rates assigned to the separate rate companies. Amanda II, 714 F. Supp. 2d at 1292-96. The Department's first redetermination on remand therefore failed to comply with the court's remand order in Amanda I. Accordingly, the court again remanded, instructing the Department to "employ a reasonable method [for calculating Plaintiffs' rates], which may 'includ[e] averaging the estimated weighted average dumping margins

Consol. Court No. 08-00301                                          Page 7

determined for the exporter and producers individually investigated.'" Id. at 1296 (quoting 19 U.S.C. § 1673d(c)(5)(B)). Moreover, the court instructed the Department to "assign to Plaintiffs dumping margins for the second POR which are reasonable considering the evidence on the record as a whole." Id. The court also ordered that Commerce could reopen the evidentiary record to the extent necessary. Id. (noting that neither Petitioner nor the Plaintiffs objected to reopening the evidentiary record of this review).

C.   Second Remand Results

In its second redetermination pursuant to court remand, in order to provide supplementary evidence sufficient to properly support the assignment of a rate to the separate rate companies, the Department reopened the record. Second Remand Results 4. Specifically, Commerce requested Plaintiffs to provide quantity and value ("Q&V") data for all POR sales on a shrimp count-size specific basis. Id. at 5. The Department then compared the count-size specific data for each Plaintiff to the count-size specific weighted-average normal value of the mandatory respondents in the second administrative review. Id.[8]

---

[8] Commerce explains that "[t]he methods employed in making these comparisons included estimated adjustments such as: 1) calculating an average unit value ("AUV") of each count size from the Q&V data; 2) unit of measure conversions; 3) a matching of count sizes between the Q&V data and the weighted-average normal values [], and; 4) gross price to net price conversions

"After having conducted these analyses, the Department determined that the record, with the additional count-size specific Q&V data, does not show evidence of dumping by the 23 Plaintiffs during this POR." Id.  Having thus corroborated the reasonableness of assigning to Plaintiffs the average of the mandatory respondents' zero and *de minimis* rates as their dumping rates for this POR, Commerce applied this methodology. Id. at 6.

While Plaintiffs "fully support" the Second Remand Results, Comments on the [Second Remand Results] on Behalf of [Pls.] 2, Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee ("AHSTAC"), the Petitioner, argues that the Second Remand Results are contrary to law because Commerce's explanation for its determination of Plaintiffs' rates in this review does not comport with a reasonable reading of the statute.[9]

---

for each count-size specific AUV to approximate the gross to net price deductions made in a typical dumping margin analysis." Second Remand Results 5.

[9] See Def.-Intervenor's Reply to Pls.' Comments on [Second Remand Results] ("Def.-Int.'s Br.") 6 ("[W]hen Commerce elected to reopen the record, the agency chose not to adjust [normal values] to reflect the differing experiences of Plaintiffs and the mandatory respondents, nor did Commerce gather information necessary to calculate dumping margins in accordance with the statute."); 7 ("A determination to assign *de minimis* margins based on an individualized analysis of the Plaintiffs that is incapable of determining whether these parties had, in fact, dumped subject merchandise during the review period is not reasonable is therefore contrary to law." (citation omitted)); 8 ("Commerce's comparison of Plaintiffs' Q&V data to the mandatory respondents' unadjusted [normal values] does not prove the absence of dumping by Plaintiffs.").

**STANDARD OF REVIEW**

"The court will sustain the Department's determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." Amanda II, __ CIT at __, 714 F. Supp. 2d at 1288 (quoting Jinan Yipin Corp. v. United States, __ CIT __, 637 F. Supp. 2d 1183, 1185 (2009) (citing 19 U.S.C. § 1516a(b)(1)(B)(i))).

**DISCUSSION**

Commerce's methodology for calculating separate rates for Plaintiffs in the Second Remand Results is a reasonable interpretation of the agency's authority under the AD statute, and was reasonably applied and supported by substantial evidence on the record.

As the court has previously observed, the statute does not address the methodology that Commerce must use when, as in this case, assigning dumping margins to companies that were not individually investigated in an administrative review. See Amanda II, __ CIT at __, 714 F. Supp. 2d at 1289 (explaining that Commerce generally relies in such situations on 19 U.S.C. § 1673d(c)(5) (the "all others rate" provision), which applies to investigations of sales at less than fair value prior to the imposition of an AD duty order).

In Amanda II, the court held that Commerce may not

categorically exclude averaging the zero and *de minimis* rates received by all individually investigated respondents from the Department's consideration of reasonable methodologies for determining rates for companies not individually investigated. Id. at 1291-92.  This is because the statute explicitly contemplates averaging the zero and *de minimis* rates received by individually investigated respondents as a reasonable methodology for assigning an estimated 'all others rate' in cases where all rates calculated for individually investigated respondents are zero or *de minimis*. Id.[10]

In its Second Remand Results, Commerce changed course and employed the methodology provided by the statute as a reasonable approach for assigning rates to non-individually investigated companies in proceedings where all rates calculated for mandatory

---

[10] ("Simply put, when a statutory provision specifically lists 'averaging the [zero and *de minimis*] estimated weighted average dumping margins determined for the exporters and producers individually investigated' as the sole provided example of 'a reasonable method to establish the estimated all-others rate' when all mandatory respondents' margins are zero or *de minimis*, 19 U.S.C. § 1673d(c)(5)(B), it is impermissible to interpret this provision as expressing a preference against the use of such methodology in such situations.  This must particularly be the case when the 'authoritative expression by the United States concerning the interpretation and application of . . . this Act,' 19 U.S.C. § 3512(d) (referring to the Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (1994), reprinted in 1994 U.S.C.A.A.N. 404 ("SAA")), expressly states that the allegedly disfavored methodology is in fact '[t]he expected method in such cases.'" (citing SAA, 1994 U.S.C.A.A.N. at 4201) (footnote omitted)).

respondents are zero or *de minimis*. See Second Remand Results 8-9; Amanda II, \_\_ CIT at \_\_, 714 F. Supp. 2d at 1291; 19 U.S.C. § 1673d(c)(5)(B). Accordingly, the methodology employed in the Second Remand Results comports with a permissible reading of the AD statute, and is therefore not contrary to law. Amanda II, \_\_ CIT at \_\_, 714 F. Supp. 2d at 1291; see Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984) (an agency acts contrary to law if it acts based on an impermissible construction of its statutory authority).

In addition, Commerce confirmed the reasonableness of using this approach with supplementary evidence. Second Remand Results 9 (explaining that Commerce "compared [] supplementary Q&V data [obtained from] the 23 Plaintiffs to a weighted-average [normal value] for the mandatory respondents," and concluded that the comparisons "yielded information that provided no evidence that the 23 Plaintiffs were dumping during the POR"). The Department interpreted this supplementary evidence to support the conclusion that averaging the mandatory respondents' zero and *de minimis* rates in this case would result in rates that were reasonably reflective of the non-individually investigated companies' pricing behavior. See id. In other words, because the Q&V data indicated that the count-size specific U.S. sales of the separate rate respondents were in line with the mandatory respondents' count-size specific weighted-average normal values, the

Department inferred that the separate rate companies' pricing behavior was not out of line with the behavior of the mandatory respondents, who were found not to be dumping. Because this inference is not unreasonable,[11] the application of Commerce's chosen methodology for determining Plaintiffs' rates in this case was supported by substantial evidence. See Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

AHSTAC complains that the Department did not calculate dumping margins for Plaintiffs in accordance with the statutory

---

[11] AHSTAC argues that, "[a]s the Department [could] not be certain that the products sold by the separate rate companies were not similar to the products having the highest reported Normal Values within each count size range, for each margin calculation the agency should [have] employ[ed] as Normal Value the highest reported Normal Value within each count size range." Def.-Int.'s Br. 5 (quotation marks and citation omitted). Here, however, where Commerce did not select the Plaintiff separate rate companies for full review, but rather was testing whether it was appropriate to apply the statutorily permitted methodology, it was not unreasonable for Commerce to use count-size specific weighted-average normal values, rather than the highest normal values available. While AHSTAC would have preferred another approach, it does not allege that Commerce erred in its calculations or that the results were aberrational.

Consol. Court No. 08-00301                                          Page 13

requirements of Sections 1675(a)(2)(A),[12] 1677a(a),[13] and 1677b.[14] Def.-Int.'s Br. 4-7.  But Commerce is not required to calculate dumping margins for Plaintiffs in the same way as it calculates the margins of individually investigated respondents. See 19 U.S.C. § 1677f-1(c) (providing a general rule for determining dumping margins under Section 1675(a), as well as an exception, applicable where it is not practicable to make individual weighted average dumping margin determinations for all respondents).  Were this not so, then that portion of the statute which allows the Department to limit its examination to a subset of the respondents for whom review was requested, id., would be rendered meaningless - an impermissible result that renders impermissible the statutory construction which leads to it. See Duncan v. Walker, 533 U.S. 167, 174 (2001) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks and citation omitted)).

Rather, all that was required of Commerce on remand was to

---

[12] 19 U.S.C. § 1675(a)(2)(A) (generally, in determining dumping margins during administrative reviews of AD duty orders, Commerce shall determine the normal value, export price (or constructed export price), and the dumping margin for each entry).

[13] Id. at § 1677a(a) (determination of export price).

[14] Id. at § 1677b (determination of normal value).

use a reasonable method to calculate Plaintiffs' margins in this review, and to support the chosen margins with a reasonable reading of the evidence on the record. Amanda II, __ CIT at __, 714 F. Supp. 2d at 1296.  Commerce has done so.  It has applied a methodology specifically contemplated in the AD statute as a reasonable approach under similar circumstances, id. at 1291, and has reasonably corroborated the resulting rates with supplemental record evidence that a reasonable mind could accept as sufficient to support its conclusion – that the average of the mandatory respondents' zero and *de minimis* rates yields rates that are not unreasonably reflective of Plaintiffs' actual pricing behavior. See Second Remand Results 9.

## CONCLUSION

For all of the foregoing reasons, the Department's Second Remand Results are AFFIRMED.  Judgment will be entered accordingly.

It is **SO ORDERED**.

                                          /s/ Donald C. Pogue
                                      Donald C. Pogue, Chief Judge

Dated:    April 14, 2011
          New York, N.Y.

UNITED STATES COURT OF INTERNATIONAL TRADE

```
AMANDA FOODS (VIETNAM) LTD.,
et al.,

                Plaintiffs,

         -v-                      Before: Pogue, Chief Judge

UNITED STATES,                    Consol. Court No. 08-00301

                Defendant,

         - and -

AD HOC SHRIMP TRADE
ACTION COMMITTEE,

                Defendant-Intervenor.
```

## JUDGMENT

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that the United States Department of Commerce's Final Results of [Second] Redetermination Pursuant to Court Remand (Dec. 2, 2010), 2d Remand Admin. R. Pub. Doc. 16, are AFFIRMED.

　　　　　　　　　　　　　　　　　　　　　　/s/ Donald C. Pogue
　　　　　　　　　　　　　　　　　　　　Donald C. Pogue, Chief Judge

Dated:   April 14, 2011
　　　　　New York, N.Y.